**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Law Offices of Diana Maier PC, | No. CV-20-02235-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| DianaMaierLaw.com, | |
| Defendant. | |

Plaintiff Law Offices of Diana Maier PC ("Maier") moves for default judgment against Defendant DianaMaierLaw.com ("Defendant Domain Name"), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (Doc. 12.) Defendant Domain Name has not appeared or filed any response. For the reasons discussed below, the motion for default judgment is granted.

**I.    BACKGROUND**

Maier filed the Complaint on November 20, 2020. (Doc. 1.) It alleges a claim under the Federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125 *et seq.* (*Id.* ¶ 17.)

All facts alleged in the Complaint (except as to damages) are assumed to be true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Maier is a "California professional corporation" that offers "specialized legal and business services to its clients since 2003 in the areas of employment and data privacy." (Doc. 1 ¶¶ 6, 9.) Maier alleges that it has used its "DIANA MAIER LAW" trademark (the "Mark") continuously and

exclusively since 2003. (*Id.* ¶¶ 1, 9.) According to Maier, it has "invested thousands of dollars in internet and other advertising to promote the Mark over the years" and has legally registered the Mark "with the California Bar and the County of Marin as an S-corp." (*Id.* ¶ 10.) The Mark has also been used in connection to different networking platforms, advertisements, and promotional materials. (*Id.*)

The firm's previous assistant, who set up the account for the disputed domain name using her personal contact information, received notice of the expiring registration. (*Id.* ¶ 11.) That assistant, however, did not tell Ms. Diana Maier that the "registration was expiring, and apparently did not renew the registration herself." (*Id.*) As a result, the disputed domain expired. (*Id.*) Sometime in 2019, someone else registered that domain name. (*Id.*) Maier contends that the new registrant created a website that has caused confusion in the marketplace and a "number of people have reached out . . . believing that [Maier's] website had been hacked." (*Id.* ¶ 13.)

In July 2020, Maier discovered that GoDaddy.com, LLC ("GoDaddy"), an Arizona limited liability company, was the "domain name registrar" for Defendant Domain Name. (*Id.* ¶ 14.) Maier then "wrote an email to GoDaddy's abuse hotline to inquire about regaining registration" to the domain name. (*Id.*) Ms. Maier also placed a phone call to GoDaddy in August 2020. (*Id.*) None of these attempts to gain information were successful. (*Id.*) "GoDaddy explained that it could not see the full contact details of the current domain owner . . . ." (*Id.*) GoDaddy also noted that it was not able to access any information about the disputed domain prior to its transfer to the new registrant and suggested that Maier pursue other legal remedies. (*Id.*) After more unsuccessful attempts to gain information from GoDaddy, Maier filed this action. (Doc. 1.) After Defendant Domain Name failed to respond, Maier applied for entry of default. (Doc. 10.) The Clerk of the Court entered default against Defendant Domain Name. (Doc. 11.) Maier then filed the pending Motion for Default Judgment. (Doc. 12.)

II. **LEGAL STANDARD**

Once default has been entered, the district court has discretion to grant default

judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The court may consider several factors, including (1) the possibility of prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy favoring a decision on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In applying the *Eitel* factors, the factual allegations of a complaint, apart from damages, are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). The moving party has the burden to prove all damages. *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

### III. DISCUSSION

#### A. Jurisdiction and Venue

"When entry of default is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). Maier asserts that this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1125(d)(2). (Doc. 1 ¶ 3.) The Court agrees because this case involves a federal question arising under the ACPA, a federal law relating to trademarks. *See* 28 U.S.C. § 1338(a); 15 U.S.C. § 1125(d)(2). Thus, subject-matter jurisdiction is satisfied.

Maier contends that *in rem* personal jurisdiction exists over Defendant Domain Name. (Doc. 1 ¶¶ 3–4.) It relies on the ACPA section that states, in relevant part, "[t]he owner of a mark may file an in rem civil action against a domain name" if the court finds that the owner "through due diligence was not able to find a person who would have been a defendant in a civil action." 15 U.S.C. § 1125(d)(2)(A)(ii)(II). Maier outlines its "due diligence in attempting to locate" the registrant by outlining the steps it took to retrieve that information from GoDaddy. (Doc. 1 ¶¶ 4, 14.) Further, Maier contends that "upon information and belief, no United States court has jurisdiction over the registrant of the

Disputed Domain, as it is believed that said registrant is located in Indonesia." (*Id.* ¶ 4.) Each allegation is also supported by a declaration. (*See* Doc. 12-1.) These allegations meet the statutory requirements to show that *in rem* jurisdiction is appropriate. *See beIN Media Grp. LLC v. bein.ae*, No. 3-18-CV-1042-CAB-MDD, 2019 WL 1129153, at *2–3 (S.D. Cal. Mar. 11, 2019) (finding that *in rem* jurisdiction was appropriate where the registrant resided outside of the United States) (citing 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25A:74 (4th ed. 2017)).

Venue is also proper in this district, as Maier alleges, pursuant to 15 U.S.C. § 1125(d)(2)(A). That section allows for an *in rem* action to be filed "against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located." *Id.*; *see also id.* § 1125(d)(2)(C) (stating that the "domain name shall be deemed to have its situs in the judicial district in which the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located"). Here, Maier alleges that GoDaddy is the registrar of Defendant Domain Name and is located in this district. (Doc. 1 ¶ 5.) Thus, venue is proper.

### B. Service

Maier contends that service was proper under 15 U.S.C. § 1125(d)(2)(A)(ii)(II). (*See* Doc. 12 at 6–7.) The ACPA provides that service of process in an *in rem* action may be accomplished by sending notice of the alleged violation and intent to proceed under the ACPA to the registrant of the domain name. *See* 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa). Here, Maier served Defendant Domain Name "with the summons, complaint, and other case-initiating documents on November 30, 2020, by sending copies of these documents to Defendant [Domain Name] via GoDaddy.com, LLC by mail and email." (Doc. 12 at 7.) Thus, service has been satisfied.

### C. Default Judgment

#### 1. The first, fifth, sixth, and seventh *Eitel* factors

In the current case, Defendant Domain Name, nor its most recent registrant, has

yet to respond or participate in this litigation. Traditionally, this means the "first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, *3 (D. Ariz. Mar. 27, 2020). The first factor weighs in favor of default judgment because denying Maier's application will leave them "without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The fifth factor also weighs in favor of default judgment because "all well-pleaded facts in the complaint are taken as true, . . . no genuine dispute of material facts would preclude granting" the motion for default judgment. *Id.* Similarly, the sixth factor weighs in favor of default judgment. Because Maier served Defendant Domain Name to the best of its ability under its statutory obligation, it is unlikely that its failure to answer was the result of excusable neglect. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006). And while the seventh *Eitel* factor generally weighs against default judgment, the existence of Rule 55(b) indicates that this preference, standing alone, is not dispositive. *PepsiCo*, 238 F. Supp. 2d at 1177. The Court, therefore, finds that this factor is not sufficient to preclude the entry of default judgment. Thus, these factors, as a whole, weigh in Maier's favor.

### 2. The second and third *Eitel* factors

The second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint—are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). The Court addresses Maier's ACPA claim in turn.

The ACPA provides a remedy for cybersquatting when "a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005)

(citation omitted). The elements of a cybersquatting claim are (1) the registration, use, or trafficking in, a domain name (2) that is identical or confusingly similar to a distinctive or famous trademark, (3) with a bad faith intent to profit from the mark. *See* 15 U.S.C. § 1125(d)(1)(A); *see also Bosley*, 403 F.3d at 680. Section 1125(d)(1)(B)(i) outlines nine nonexclusive factors a court may consider in determining whether a registrant had a bad faith intent to profit from the mark. "Courts need not, however, march through the nine factors seriatim because the listed criteria are permissive and the ACPA allows for consideration of the unique circumstances of the case." *beIN Media Grp. LLC*, 2019 WL 1129153, at *4 (citing *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009)). The Court agrees with Maier that the merits of its claim and the sufficiency of the Complaint favor granting default judgment.

As a threshold matter, Maier contends that it owns "common-law trademark rights" in the Mark. (Doc. 12 at 4.) Accordingly, Maier must establish trademark rights in the absence of federal registration. *See Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1118 (S.D. Cal. 2014). "To establish enforceable common law trademark rights in a geographical area, a plaintiff must prove that, in that area, (1) it is the senior user of the mark, and (2) it has established legally sufficient market penetration." *Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F. Supp. 2d 953, 959 (C.D. Cal. 2012). Further, to maintain a common law trademark right, there must be a continuing use. *See Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 762 (9th Cir. 2006). "To be a continuing use, the use must be maintained without interruption." *Casual Corner Assocs., Inc. v. Casual Stores of Nevada, Inc.*, 493 F.2d 709, 712 (9th Cir. 1974). Here, Maier has proven its Mark is a valid, distinctive common law trademark. Maier has established that it, and its predecessors-in-interest, have used the Mark continuously and exclusively since 2003. (Doc. 12-1 at 1–4.) Several exhibits show that Maier, for example, has used the Mark as a domain name, in connection with promotional material and legal advertisements, and used the Mark in other forms of commerce. (*See* Docs. 12-1, 12-2.) That is sufficient to show that there was enough market penetration to establish a common law trademark.

Maier has therefore shown that the Mark is a valid common law trademark.

With a protected mark, Maier adequately alleges a cybersquatting claim under 15 U.S.C. § 1125(d). An unknown registrant captured Defendant Domain Name and used the protected Mark. "If Defendant Domain Names and Plaintiff's mark are virtually identical, then they are 'confusing similar' under the ACPA." *Opt Out Servs. LLC v. OprOutPrescreen.com*, No. 1-20-CV-443-TSE-TCB, 2020 WL 5997310, at *5 (E.D. Va. Sept. 11, 2020), report and recommendation adopted, No. 1:20-CV-443, 2020 WL 5995498 (E.D. Va. Oct. 8, 2020). Here, Defendant Domain Name and Maier's Mark are identical. This satisfies a showing that these are confusingly similar for purposes of the ACPA. Finally, Maier has shown that there was bad faith intent to profit from this Mark. The unknown registrant's use of the disputed domain name consisted entirely of Maier's Mark, was not used in connection with the bona fide offering of goods or services, and was purely commercial. (*See* Doc. 12-1.) The registrant seemed to intend to, and in fact did, divert consumers from Maier's location to its own site. (*Id.*) Thus, after considering the relevant factors, Maier has satisfied its burden to allege a cybersquatting claim and satisfy *Eitel*'s second and third factors.

### 3. The fourth *Eitel* factor

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendants' conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006). In contrast to a complaint's other allegations, allegations pertaining to damages are not taken as true when considering a motion for default judgment. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). A district court has "wide latitude" in determining the amount of damages to award upon default judgment. *James v. Frame*, 6 F.3d 307, 310 (9th Cir. 1993). Here, Maier does not seek monetary damages. Rather, it "seeks the recovery of the domain name, DianaMaierLaw.com." (Doc. 12 at 11.) Thus, this factor weighs in favor of the

entry of default judgment.

### 4. Conclusion

After reviewing the *Eitel* factors, the Court finds the Maier is entitled to default judgment against Defendant Domain Name. Because Maier does not seek money damages, the Court will require GoDaddy to take the necessary steps to have Maier listed as the registrant of the domain name at issue.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED granting** Maier's Motion for Default Judgment (Doc. 12).

**IT IS FURTHER ORDERED** that GoDaddy shall take all necessary steps to transfer Defendant Domain Name to Maier and have Maier listed as the registrant of the domain name DianaMaierLaw.com.

**IT IS FINALLY ORDERED** directing the Clerk of the Court to close this case and to enter judgment accordingly.

Dated this 12th day of August, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge